UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
GEORGE KING,                   )
                               )
          Plaintiff,           )
                               )
     v.                        )
                               )
LONG BEACH MORTGAGE COMPANY,   )
                               )  CIVIL ACTION
          Defendant.           )  NO. 06-11931-WGY
                               )
                               )
                               )
WASHINGTON MUTUAL BANK,        )
                               )
          Third-Party Plaintiff, )
                               )
     v.                        )
                               )
KATHLEEN C. BYRNE, ESQ.,       )
                               )
BUONICONTI & BUONICONTI LAW    )
OFFICES, INC.,                 )
                               )
COMMONWEALTH LAND TITLE        )
INSURANCE COMPANY,             )
                               )
          Third-Party Defendants. )
                               )
_____)
```

**MEMORANDUM**

YOUNG, D.J.                                    December 9, 2009

## I.   INTRODUCTION

On September 23, 2009, this Court issued an order in
relation to the motions for summary judgment filed in connection
with this case.  Order Granting in Part and Denying in Part Mot.

Summ. J., Sept. 23, 2009 [Doc. No. 90].  This memorandum explains the reasoning behind the Court's decision.

## II.  BACKGROUND

On Wednesday, May 25, 2005, the plaintiff George King ("King") executed a promissory note and mortgage deed (the "Loan Transaction") in favor of the defendant Long Beach Mortgage Company ("Long Beach"), in connection with a mortgage refinancing loan.  See Kane's Aff. Supp. Chase's Mot. Summ. J. Ex. 5 [Doc. No. 72].  Long Beach retained outside counsel, the Buoniconti & Buoniconti Law Offices, Inc. ("Buoniconti"), for the closing of the Loan Transaction (the "Closing").  Third Party Compl. ¶ 8. Buoniconti assigned the Closing to Kathleen C. Byrne, Esq. ("Byrne").  Id. ¶ 9.  Washington Mutual Bank ("Washington Mutual") became the successor-in-interest to Long Beach. Washington Mutual's Statement of Undisputed Material Facts ¶ 2 [Doc. No. 49].  Subsequently, the Federal Deposit Insurance Corporation ("FDIC") was appointed Receiver for Washington Mutual, Kane's Aff. Supp. Chase's Mot. Summ. J. Ex. 4, and by operation of law succeeded to "all rights, titles, powers and privileges of" the failed bank.  See 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i).  Immediately following appointment of the FDIC as Receiver of Washington Mutual, the FDIC entered into a Purchase and Assumption Agreement (the "P&A Agreement") to sell certain banking assets of Washington Mutual to JPMorgan Chase Bank, National Association ("Chase").  Included

in the sale was the promissory note and mortgage deed executed by King.  Kane's Aff. Supp. Chase's Mot. Summ. J. Ex. 3 ¶ 3.1 (clause in P&A Agreement stating that Chase shall acquire from the Receiver of Washington Mutual "all right, title, and interest of the Receiver in and to all of the assets (real, personal and mixed, wherever located and however acquired) . . . .").  Pursuant to the P&A Agreement, the FDIC expressly retained the liabilities associated with King's claims. Id. ¶ 3.1.

A.  **CLAIMS, COUNTERCLAIMS AND THIRD-PARTY CLAIMS**

King brought claims against Long Beach for violations of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 et seq., and implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226, or its Massachusetts counterparts, the Massachusetts Consumer Credit Cost Disclosure Act (the "MCCCDA"), Mass. Gen. Laws ch. 140D, §§ 1-34, and 209 Mass. Code. Regs. 32.[1]  Am. Compl. ¶¶ 15-16 [Doc. No. 14].  King argued the TILA violations caused his right to rescind the loan transaction under 15 U.S.C. § 1635(b) to be extended from three business days to three years.  See 12 C.F.R. § 226.23(3) (providing that certain violations of TILA trigger the extension of the rescission right).  Accordingly, King argued he timely rescinded the loan transaction by sending a notice of rescission to Long Beach on or about September 13,

---

[1] The MCCCDA is closely modeled on TILA and should be construed in accordance with TILA. Bizier v. Globe Fin. Serv., Inc., 654 F.2d 1, 2 (1st Cir. 1981).  Accordingly, the subsequent discussion will focus exclusively on the provisions of TILA.

2006.  Am. Compl. ¶ 11.  King sought (1) a declaration that he is
entitled to rescind under 15 U.S.C. §1635(a), (2) rescission of
the loan pursuant to that section, (3) statutory damages under
TILA, (4) attorneys' fees, litigation expenses and costs and (5)
such other relief as the Court deems appropriate.  Am. Compl. 5.

In response, Washington Mutual brought counterclaims against
King for unjust enrichment arising out of the receipt of the
benefits of the loan without repayment (Count I) and breach of
contract in relation to the loan agreement (Count II) and in
addition, requests a declaration of rights and legal interests of
King and Washington Mutual (Count III).  Washington Mutual's
Coutercl. 7-9 [Doc. No. 16].[2] Further, Washington Mutual asserted
third-party claims, pursuant to Federal Rule of Civil Procedure
8(a), against Buoniconti and Byrne for negligence (Count III),
breach of fiduciary duty (Count IV), legal malpractice (Count V),
and indemnity and contribution (Count VI).  Third Party Compl. ¶¶
31-55 [Doc. No. 18].  Washington Mutual also brought a third-
party breach of contract claim (Count VII) against Commonwealth
Land Title Insurance Company ("Commonwealth") for denying

---

[2] Washington Mutual also brought third-party claims against
King's spouse, Joan C. King ("Mrs. King") for unjust enrichment
and breach of contract.  Third Party Compl. ¶¶ 21-30.
Subsequently, all parties have stipulated, pursuant to Federal
Rule of Civil Procedure 41(a)(1)(ii), for the third-party claims
against Mrs. King to be dismissed.  Stipulation of Dismissal
[Doc. No. 87].

Washington Mutual's claim for title insurance coverage in connection with the Loan Transaction.  Id. ¶¶ 56-62.

B.  **MOTIONS FOR SUMMARY JUDGMENT**

The FDIC sought summary judgment on the ground that King cannot recover against the FDIC as matter of law.  See FDIC's Mot. Summ. J. [Doc. No. 65].  First, the FDIC argued that 12 U.S.C. § 1821(j) divests federal courts of jurisdiction to grant any form of relief against the FDIC, including rescission.[3] FDIC's Mem. Supp. Mot. Summ. J. 4 [Doc. No. 67].  Second, the FDIC argued that involuntary assignees are not subject to claims for damages under TILA.  Id. at 5.  Third, the FDIC adopted and incorporated by reference Washington Mutual's motion for summary judgment, FDIC's Mot. Summ. J. 3, which argued that as matter of law, King's rescission right was not extended to three years, Washington Mutual's Mot. Summ. J. 2 [Doc. No. 48].

Chase sought summary judgment to enforce the promissory note and mortgage deed it acquired pursuant to the P&A Agreement and to collect the entire balance plus interest, costs, and attorneys' fees.  Chase's Mot. Summ. J. [Doc. No. 69].  Chase argued that King has no defense to the enforcement of the note because even if a right to rescind existed under section 1635(a), the FDIC expressly retained liability for rescission under the

---

[3] At the motion hearing held on September 22, 2009, counsel for the FDIC conceded that this Court has jurisdiction over the FDIC pursuant to 12 U.S.C. § 1821(d)(6).

judicially enforceable P&A Agreement.  Chase's Mem. Supp. Mot. Summ. J. 5 [Doc. No. 71].

Buoniconti sought summary judgment as to Washington Mutual's third-party claims against it.  Buoniconti's Mot. Summ. J. [Doc. No. 43].  Buoniconti argued that it owed no duty of care to Long Beach and that in any case, since it did not actually perform the Closing, Buoniconti did not cause Long Beach's TILA violations (if any).  Buoniconti's Mem. Supp. Mot. Summ. J. 5-7 [Doc. No. 45].  Buoniconti also sought summary judgment as to Byrne's cross-claim for indemnity against it.  Id. at 13.

    C.  **FACTS**

For the purposes of Washington Mutual's motion for summary judgment, King does not dispute the facts contained in Washington Mutual's Statement of Undisputed Material Facts.  King's Mem. Opp'n Washington Mutual's Mot. Summ. J. 1 n.1 [Doc. No. 56].

King and Mrs. King obtained from Long Beach a non-purchase money loan secured by owner-occupied real property.  Am. Compl. ¶ 9.  With respect to these types of loans, TILA confers upon the debtor a right to rescind or cancel the transaction within three business days of the transaction's consummation or three business days from delivery of the material disclosures, whichever occurs later.  15 U.S.C. § 1635(a).  The creditor must "clearly and conspicuously" disclose the statutory rescission right to the consumer by delivering a Notice of Right to Cancel (the "Notice").  Id.  If a creditor fails to deliver to the consumer

the "notice required by paragraph (b) of [12 C.F.R. § 226.23],"
the duration of the right to rescind is extended from three days
to three years.  12 C.F.R. § 226.23(a)(3).  If a creditor does
not respond to a rescission request within twenty days, the
debtor may file suit in federal court to enforce the rescission
right.  15 U.S.C. § 1635(b).  <u>See</u> <u>Bellini</u> v. <u>Washington. Mut.</u>
<u>Bank</u>, 412 F.3d 17, 20 (1st Cir. 2005).

Byrne, King, and Mrs. King were the only individuals present
at the Closing, which was conducted in the Kings' kitchen.  A
Closing Packet was given to the Kings.  Statement of Undisputed
Facts ¶¶ 13, 16.  It contained a single copy of a notice of right
to rescind.  <u>Id.</u> ¶ 16.  The relevant parts of the Notice are
duplicated below.

> You have a legal right under federal law to cancel this
> transaction, without cost, within THREE BUSINESS DAYS
> from whichever of the following events occurs last:
> (1)   The date of the transaction, which is_____;
>       or
> (2)   The date you received your Truth in Lending
>       disclosures; or
> (3)   The date you received this notice of your right to
>       cancel.
> . . . .
> If you cancel by mail or telegram, you must send the
> notice no later than MIDNIGHT of _____ (or
> MIDNIGHT of the THIRD BUSINESS DAY following the latest
> of the three events listed above.)  If you send or
> deliver your written notice to cancel some other way, it
> must be delivered to the above address no later than that
> time.

Compl. Ex. A.

On the Notice, the blank following "(1) The date of the
transaction, which is" was not filled in by hand.  <u>Id.</u>  The

Closing date, however, does appear in typeface on the top right hand corner of the Notice.  See id.  Also, the blank following "you must send the notice no later than MIDNIGHT of" was not filled in with the expiration date of the rescission right.  Id.

In Washington Mutual's file concerning King's loan, there is a second copy of the Notice which contains (1) the handwritten dates of the Closing and expiration of the rescission right, (2) initials of the Kings next to both dates, and (3) Mr. King's signature acknowledging receipt of two copies of the Notice. Statement of Undisputed Facts ¶ 17.  This copy apparently was delivered to the Kings initially, but returned to Washington Mutual after the Closing.

Some time after the Closing, the Kings fell behind in their mortgage payments.  Id. ¶ 25.  The Kings, through their attorney, sought to rescind the loan transaction by sending a letter to Washington Mutual on or about September 13, 2006, more than 15 months after the consummation of the loan transaction.  Id. ¶ 26. Washington Mutual determined that the extension of the rescission period to three years was not triggered.  Id.  Accordingly, in a letter dated October 5, 2006, Washington Mutual refused to rescind the loan transaction.  Id.

Under the administrative structure established in the Federal Deposit Insurance Act (the "FDIA"), 12 U.S.C. § 1811 et seq., claimants of a failed bank must file their claims with the FDIC for its determination on the merits.  12 U.S.C. §

8

1821(d)(3).  King filed his proofs of claim with the FDIC on December 26, 2008, demanding rescission of the mortgage, statutory damages and attorneys' fees and costs.  Kane's Aff. Supp. FDIC's Mot. Summ. J. Ex. 3 [Doc. No. 68].  On June 19, 2009, the FDIC issued a Notice of Disallowance of Claim with respect to King's claims.  Id. Ex. 6.

D.  **FEDERAL JURISDICTION**

King's TILA claims arise under federal law.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction).  Chase's counterclaim (as it is successor to Washington Mutual) against King satisfies the requirements for diversity of citizenship jurisdiction.  See 28 U.S.C. § 1332. Alternatively, these couterclaims are so related to the federal law claims that they form part of the same case or controversy. 28 U.S.C. § 1367(a).  The third-party claims against Buoniconti and Byrne also satisfy the requirements of section 1332.  See 28 U.S.C. § 1332.  Alternatively, they meet the requirements for supplemental jurisdiction.  See 28 U.S.C. § 1367(a).

1.  Jurisdiction Over King's Claims Against the FDIC

The FDIC argues that the FDIA, 12 U.S.C. § 1821(j), deprives this  Court of jurisdiction to "grant any form of relief against the FDIC" in its capacity as Receiver of Washington Mutual. FDIC's Mem. Supp. Summ. J. 4.  The provision states: "[e]xcept as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to

9

restrain or affect the exercise of the powers or functions of the Corporation as a conservator or receiver."  12 U.S.C. § 1821(j). When Congress enacts a statute prohibiting the federal courts from granting certain remedies, such limitations are jurisdictional.  See Blangeres v. Burlington N., Inc., 872 F.2d 327, 328 (9th Cir. 1989).  The First Circuit has interpreted section 1821(j) as depriving Federal courts of subject-matter jurisdiction to grant any form of relief against the FDIC as Receiver.  Lloyd v. FDIC, 22 F.3d 335, 336 (1st Cir. 1994); Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 707 (1st Cir. 1992).  This interpretation is reasonable because the FDIC's receivership powers are so broad that any judicial action can be said to "restrain" or "affect" at least one of these powers or functions.  See 12 U.S.C. § 1821(d)(2)(B) (empowering the FDIC to operate the failed bank, continue to perform all its functions, and dispose of its assets); 12 U.S.C. § 1821(d)(3) (empowering the FDIC to determine claims against the failed bank).

  2. Jurisdiction Under Section 1821(d) Over Lawsuits Continued After Denial of Claim by the FDIC

It is unfortunate that the FDIC has focused exclusively on the jurisdictional ouster in 12 U.S.C. § 1821(j).  See FDIC's Mem. Supp. Mot. Summ. J. 10-14.  After all, King made it clear that it is not asking the Court to exercise jurisdiction under section

1821(j).  King's Mem. Opp'n. FDIC's Mot. Summ. J. 4 n.2 [Doc. No. 85].

In its memoranda, the FDIC paid no attention to 12 U.S.C. § 1821(d)(6), which expressly confers jurisdiction upon federal courts to consider lawsuits continued by claimants after an unfavorable administrative determination by the FDIC of their claims.  That provision is part of the administrative structure established by the FDIA, under which claimants against failed banks are given notice and an opportunity to present their claims to the FDIC.  The FDIC then exercises its section 1821(d)(3) authority to determine the merits of these claims and must ordinarily make such determinations within 180 days.  12 U.S.C. § 1821(d)(5)(A).  If claimants are not satisfied with the FDIC's determination, they have two options.  See 12 U.S.C. § 1821(d)(6)(A).  They can either seek "administrative review of the claim" or:

> file suit on such claim (or **continue an action commenced before the appointment of the receiver**) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court of the District of Columbia (and such court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A)(ii) (emphasis added).

In the present case, King has properly pursued the second option.  After receiving a Notice of Disallowance of Claim from the FDIC, Kane's Aff. Supp. FDIC's Mot. Summ. J. Ex. 6, King continued his original action, which was commenced against Long

11

Beach before the appointment of the FDIC as Receiver of
Washington Mutual.  Further, section 1821(d)(6)(A)(ii) operates
as an exception to the general jurisdictional ouster in section
1821(j) because section 1821(j) only applies "except as provided
in this section."  12 U.S.C. § 1821(j).  Accordingly, this Court
has subject-matter jurisdiction over King's claim against the
FDIC pursuant to 12 U.S.C. § 1821(d)(6)(A)(ii).

    **E.**   **VENUE**

    With respect to King's claims against the FDIC, section
1821(d)(6)(A)(ii) creates a venue issue.  The provision states
that King must continue his lawsuit in either the district in
which Washington Mutual had its principal place of business
(Nevada) or the district court for the District of Columbia.  12
U.S.C. § 1821(d)(6)(A)(ii).  Although section 1821(d)(6)(A)(ii)
concludes with the words "and such court shall have **jurisdiction**
to hear such claim" (emphasis added), the designation of the two
district courts is treated as a venue, rather than a
jurisdictional, requirement.  In re 5300 Memorial Investors,
Ltd., 973 F.2d 1160, 1163 (5th Cir. 1992); Karol v. Resolution
Trust Corp., 839 F. Supp. 14, 17 n.3 (E.D. Tex. 1993); Vinton v.
Trustbank Sav., F.S.B., 798 F. Supp. 1055, 1065 (D. Del. 1992).
Further, a plaintiff who has already commenced an action before
the receivership must nevertheless "continue" his or her action
in one of the two district courts designated in section
1821(d)(6)(A)(ii).  See Burr v. Transohio Sav. Bank, No. 95-

20144, 1995 WL 798590, at *4 (5th Cir. Dec. 27, 1995).  At the
Motion Hearing held on September 22, 2009, however, counsel for
the FDIC waived the venue issue.  Accordingly, the District of
Massachusetts is the proper venue for all aspects of the present
dispute.

**III. DISCUSSION**

    A.   **SUMMARY JUDGMENT STANDARD**

    A motion for summary judgment is to be granted if "there is
no genuine issue as to any material fact and . . . the movant is
entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).
In evaluating the record to decide whether there is a genuine
issue of material fact, "[t]he evidence of the non-movant is to
be believed, and all justifiable inferences are to be drawn in
his favor."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255
(1986).  Further, the moving party bears the burden of
demonstrating that there is no triable issue of fact.  Celotex
Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The burden then
shifts to the non-moving party to show that a trier of fact could
reasonably find in the non-moving party's favor.  Id. at 322-25.


    B.   **THE MERITS**

        1.   Liability of the FDIC

            a.   Damages and penalties against the FDIC are
                barred

King correctly has conceded that it cannot recover monetary damages or attorneys' fees against the FDIC.  King's Mem. Opp'n. FDIC's Mot. Summ. J. 1 n.1.  Under 15 U.S.C. § 1635(g), a court may grant, in addition to rescission, additional relief (such as damages) for violations of TILA.  But section 1641(e)(1) makes it clear that a "civil action" against a creditor may only be brought against a "voluntary assignee" of that creditor.  15 U.S.C. § 1641(e)(1) (dealing with liability of assignee for consumer credit transactions secured by real property).  The FDIC is not a "voluntary assignee" of Washington Mutual because the FDIC is statutorily obligated to accept appointment as Receiver and succeeded by operation of law to "all rights, titles, powers and privileges" of Washington Mutual.  See 12 U.S.C. § 1821(d)(2)(A)(i).  The term "civil action" encompasses all civil litigation because there is only "one form of action – the civil action".  See Fed. R. Civ. P. 2.  King's claims for damages and attorney fees are clearly part of a civil action.  Accordingly, these non-rescission claims against the FDIC are barred by 15 U.S.C. § 1641(e)(1).

Additionally, King seeks "[s]uch other relief as the Court deems appropriate".  Am. Compl. 5.  Even if this Court were inclined to impose punitive damages or fines, the FDIA provides the FDIC with a complete defense.  The defense is found in 12 U.S.C. § 1825(b)(3), which states that as Receiver, the FDIC

"shall not be liable for any amounts in the nature of penalties or fines . . . ."

                          b.     Rescission cannot be exercised as against the
                                 FDIC

     TILA states that any consumer with the right to rescind "may rescind the transaction as against any assignee of the obligation". 15 U.S.C. § 1641(c). "Any assignee" includes governmental agencies, such as the FDIC, that step into the shoes of a failed bank by operation of law. See Federal Deposit Ins. Corp. v. Hughes Dev. Co., Inc., 684 F. Supp. 616, 622-23 (D. Minn. 1988).

     Rescission against the FDIC is still impossible in the present case. Rescission is the unmaking of a transaction between parties to that transaction. Pursuant to the P&A Agreement, however, Chase has replaced the FDIC as the party to the loan transaction. Rescission in the TILA context, as envisaged by Congress, is a private and mutual process involving both the consumer and the creditor "working out the logistics" of returning any property, monies and financial charges. 15 U.S.C. § 1635(b) (stating that after rescission right has been exercised, consumer must tender any property that was given by creditor and creditor must return any money or property given as earnest money, downpayment, or otherwise; McKenna v. First Horizon Home Loan Corp. 475 F.3d 418, 421 (1st Cir 2007) ("Rescission essentially restores the status quo ante; the

creditor terminates its security interest and returns any monies paid by the debtor in exchange for the latter's return of all disbursed funds or property interests."). Rescission, therefore, only makes sense if exercised by the consumer (King) as against the **current** creditor (Chase). The statutory language supports this interpretation by referring to rescission as a right which is exercised as against "any **assignee."** 15 U.S.C. § 1641(c).

Neither TILA nor Regulation Z define the term "assignee." Regulation Z, however, provides that "[f]or the purposes of this regulation," any term it does not define is to have the "meaning[] given to [it] by state law or contract." 12 C.F.R. § 226.2(b)(3). According to the Supreme Court, the usual definition of "assignee" in "legal and ordinary usage" is "one to whom a **right** or property is legally transferred". Holywell Corp. v. Smith 503 U.S. 47, 53 (1992) (quoting Webster's Third New International Dictionary 132 (1986)) (emphasis added). Applying this definition, the FDIC **was** an "assignee" when it first became Receiver of Washington Mutual and acquired all rights and assets of Washington Mutual by operation of law. It is, however, no longer an "assignee" because the rights in the promissory note and mortgage deed have been transferred to Chase, pursuant to the P&A Agreement. Since it no longer holds any rights in the promissory note or mortgage deed, the FDIC no longer fits the description of "assignee" or "any assignee." King's rescission

remedy, if any, must be invoked against the current assignee,
Chase.

Further, the term "any", which precedes the word "assignee,"
is not intended to refer to past or previous assignees.  In other
words, it would be absurd to interpret the use of "any" as having
the effect of making the rescission remedy available against
every single person that had previously held rights to a loan
transaction but has since transferred the rights to someone else.
Rather, the term "any" is used simply to emphasize that the
rescission remedy applies to any assignee, regardless of their
knowledge or involvement in the original TILA violation, or their
status as holder in due course.  <u>See</u> Ralph J. Rohner, Frederick
H. Miller, <u>Truth in Lending</u> 647 (2000).  <u>See also</u> <u>Stone</u> v.
<u>Mehlberg</u>, 728 F. Supp. 1341, 1348 (W.D. Mich. 1989) (stating that
the deliberate use of the term "any assignee" clearly indicates
Congress's intent that the holder in due course doctrine is not a
defense against TILA rescission).

For the foregoing reasons, TILA's rescission remedy cannot
be exercised as against a previous assignee such as the FDIC.
Accordingly, the FDIC's motion for summary judgment was **GRANTED**.

2.   Chase's Ability to Enforce the Promissory Note

Pursuant to the P&A Agreement, Chase acquired the promissory
note and mortgage deed executed by King.  Kane's Aff. Supp.
Chase's Mot. Summ. J. Ex. 3 ¶3.1.  Whether Chase can enforce the

promissory note depends on whether King can exercise the right of rescission (if any) against Chase.

a.      Paragraph 2.5 of the P&A Agreement

Chase argues that even if a three-year rescission right were to exist, it is the FDIC that contractually retained the liabilities associated with King's loan, including any potential liability for rescission.   Chase's Mem. Supp. Mot. Summ. J. 5. Chase cites paragraph 2.5 of the P&A Agreement, which provides:

> Notwithstanding anything to the contrary in this Agreement, any liability associated with borrower claims for payment of or liability to any borrower for monetary relief, or that provide for any other form of relief to any borrower, whether . . . legal or equitable . . . related in any way to any loan . . . made by [Washington Mutual] prior to failure, or to any loan made by a third party in connection with a loan which is or was held by [Washington Mutual] . . . are specifically not assumed by [Chase]

Kane's Aff. Supp. Chase's Mot. Summ. J. Ex. 3 ¶ 2.5.

Chase argues that as matter of federal law, courts must enforce the terms of the P&A Agreement.   Chase's Mem. Supp. Mot. Summ. J. 5.   Chase relies on Yeomalakis v. F.D.I.C., 562 F.3d 56 (1st Cir. 2009).   In Yeomalakis, a Washington Mutual credit card holder challenged the issuer's allegedly unlawful practice of retroactively increasing interest rates.   Id. 562 F.3d at 58-59. The plaintiff's motion to substitute Chase for the FDIC as defendant was denied because the P&A Agreement expressly retained liability in the FDIC.   Id. at 60.   But following Yeomalakis and enforcing the liability retention provision of the P&A Agreement

18

does not resolve the issue in Chase's favor.  TILA's rescission remedy is exercisable against the holder of the asset, not the retainer of the liability.

> b.   "Assignee" Includes Transferees That Only Assume Rights and Not Liabilities

As already noted, assignment is simply a "transfer of rights or property".  Black's Law Dictionary 128 (8th ed. 2004).  A transaction is an assignment even if related duties or liabilities are not transferred.  Just because liabilities are retained by the transferor does not mean the transferee is not an assignee.  Under TILA, it is the assignee who is subject to the consumer's statutory right to rescind the loan transaction. Section 1641(c) expressly states that the rescission right is available against "any **assignee** of the obligation."[4]  15 U.S.C. § 1641(c) (emphasis added).  Having acquired the rights to the loan transaction, Chase is the current "assignee" of the promissory note and mortgage for the purposes of 15 U.S.C. § 1641(c).  The fact the FDIC has retained the related liabilities does not alter Chase's status.

---

[4] In the section 1641(c) context, "obligation" refers to the **consumer's** obligations to repay the debt, not the creditor's obligations under TILA.  12 C.F.R. § 226.2(b)(2) ("Where the words obligation and transaction are used in this regulation, they refer to a consumer credit obligation or transaction, depending upon the context.")

Further, being an assignee of the FDIC does not give Chase any special immunity from section 1641(c).  The term "any assignee" is all-encompassing and "[n]o exception from liability is specifically provided for assignees of governmental agencies. In re Pinder, 83 B.R. 905, 911 (Bankr. E.D. Pa. 1988).

This analysis accords with the overall Congressional intent behind TILA.  Specifically, TILA refers to the consumer's right to rescind as "**his** right to rescind."  15 U.S.C. § 1635(b) (emphasis added).  A right belonging to the consumer ought not be extinguishable by a contract between the original assignee of the mortgage (FDIC) and its subsequent acquirer (Chase), without the consumer's consent or input.  Accordingly, it is contrary to Congressional intent to allow the rescission right to be contracted away in the manner suggested by Chase.

King's right to rescind under 15 U.S.C. § 1635(a), if it were extended to three years, would be exercisable as against Chase.  Rescission would render the loan transaction void and provide a complete defense to Chase's enforcement of the promissory note.  15 U.S.C. § 1635(b).  For that reason, Chase's motion for summary judgment was **DENIED.**

> 3.    Whether King's Rescission Right was Extended to Three Years

Having concluded that any rescission right is exercisable only against Chase, the next logical question is whether TILA was

violated in such a way that King's rescission right was extended to three years.

TILA requires that creditors "clearly and conspicuously" disclose the consumer's right to rescind. 15 U.S.C. § 1635(a). The specific requirements for the Notice are set out in the respective federal and state regulations implementing the statutes. 12 C.F.R. § 226.23; 209 Mass. Code Regs. 32.23.   In virtually identical language, these regulations state that (1) the Notice must contain a number of items, including the date of the transaction and the "date the rescission period expires," and (2) the creditor must deliver two copies of the Notice to the consumer.  12 C.F.R. § 226.23(b)(1).  According to King, neither requirement was satisfied.  Am. Compl. ¶ 15-16.

First, King argues that by not indicating the transaction date and the expiration date, the creditor failed to provide "required notice," triggering an extension of the rescission right to three years.  See 12 C.F.R. § 266.23(3).  In response, Chase argues that the Notice given to King was "clear and conspicuous" as matter of law and any omissions did not have legal consequence.  Washington Mutual's Mem. Supp. Mot. Summ. J. 8 [Doc. No. 50].

Second, King argues that a creditor's failure to deliver the required number of notices also triggers an extension of the rescission right to three years.  Am. Compl. ¶16.  In response,

Chase argues that delivery of a single copy of the notice does not trigger such extension.  Washington Mutual's Mem. Supp. Mot. Summ. J. 10.

> a.  Whether the Notice Was Clear and Conspicuous
>     as Matter of Law
>     (1) Average Consumer Standard, Not Perfection
>     Standard

The clear and conspicuous standard does not require perfect compliance with every single disclosure requirement set out in Regulation Z.  Santos-Rodriquez v. Doral Mortgage Corp., 485 F.3d 13, 16 (1st Cir. 2007) ("Most Courts have concluded that TILA's clear and conspicuous standard is less demanding than a requirement of perfect notice."); Veale v. Citibank, 85 F.3d 577, 581 (11th Cir. 1996) ("TILA does not require perfect notice; rather it requires a clear and conspicuous notice. . ."); Smith v. Chapman, 614 F.2d 968, 972 (5th Cir. 1980) ("Strict compliance does not necessarily mean punctilious compliance if, with minor deviations from the language described in [TILA], there is still a substantial, clear disclosure of the fact or information demanded by the applicable statute or regulation.").  In line with the majority of circuits, the First Circuit analyzes the sufficiency of the Notice objectively, based on whether the average consumer would find it confusing.  Palmer v. Champion Mortgage, 465 F.3d 24, 28-29 (1st Cir. 2006).

The average consumer test adopted in <u>Palmer</u> gives effect to Congressional intent.  In 1968, Congress enacted TILA "to assure a meaningful disclosure of credit terms" and "to protect the consumer against inaccurate and unfair credit . . . practices." 15 U.S.C. § 1601(a).  Since its enactment, however, an onslaught of consumer class-action lawsuits have exploited TILA's generous consumer protection provisions by invoking the powerful rescission remedy for mere technical disclosure violations. <u>McKenna</u>, 475 F.3d at 424.  In response, Congress passed the Truth in Lending Act Amendments of 1995 to set "higher tolerance levels for what it viewed as honest mistakes in carrying out disclosure obligations." <u>Id.</u>  The current statutory language, as amended in 1995, is aimed at preventing creditors from facing overwhelming and "draconian" liability (rescission) for relatively minor violations.  <u>Id.</u> (citing Truth in Lending Act Amendments of 1995, Pub. L. No. 104-29 § 3, 109 Stat. 271, 272-73; 141 Cong. Rec. S14566, 14567 (statement of Rep. D'Amato)).  These measures are necessary to prevent a "financial disaster in the mortgage industry".  <u>McKenna</u>, 475 F.3d at 424 (citing 141 Cong. Rec. S14566, 14568 (statement of Rep. Mack)).   The average consumer test adopted by the First Circuit provides a higher tolerance level for non-confusing technical mistakes in disclosures to consumers, just as Congress intended.

King contends that Courts "must give effect to the unambiguously expressed intent of Congress" and therefore must enforce Regulation Z to the letter.  King's Mem. Opp'n Washington Mutual's Mot. Summ. J 5-7.  Yet, as the preceding paragraph shows, Congress itself did not intend such strict and technical enforcement of the disclosure requirements.

(2) Whether the Notice to King Satisfies the Average Consumer Test

Ordinarily, whether TILA disclosures are confusing to the average consumer is a question of fact for the fact-finder. Griggs v. Provident Consumer Discount Co., 503 F. Supp. 246, 250 (E. D. Pa. 1980) (citing Barber v. Kimbrell's, Inc., 424 F.Supp. 42 (W.D.N.C. 1976), aff'd in part, rev'd in part, 577 F.2d 216 (4th Cir. 1978)).  Where the Notice is so confusing that a reasonable jury could not return a verdict for the defendant, however, summary judgment for the plaintiff is appropriate.  Id.

In the present case, Washington Mutual's failure to include an expiration date for the rescission right on the Notice retained by King was sufficiently confusing that a jury might well return a verdict for the nonmoving party.  Without being provided with the expiration date for the rescission right, the average consumer is left to calculate when three business days will end on his own.  This is a confusing task because Regulation

24

Z adopts a counter-intuitive definition of business day that includes Saturdays.  See 12 U.S.C. § 226.2(a)(6) (stating that business day "means all calendar days except Sundays and the legal public holidays specified in 5 U.S.C. § 6103(a). . . ."); Aubin v. Residential Funding Co., 565 F.Supp.2d 392, 397 (D. Conn. 2008) ("[I]t would likely surprise the average person . . . to learn that 'Saturday' is included within TILA's definition of a 'business day.'").  Counting becomes particularly confusing when it commences on a Wednesday.  According to TILA, the end of three "business" days would be on Saturday.  An average consumer, however, would not consider Saturday to be a business day and conclude that three  business days ended on the following Monday. In the present case, the date of transaction, the date King received TILA disclosures and the date King received the Notice all coincided at the Closing on Wednesday, May 25, 2005. Washington Mutual's Statement of Undisputed Material Facts ¶ 13.

True, King saw and even signed a completed copy of the Notice at the Closing.  But this does not change the conclusion because an average consumer may forget what was written on the completed Notice.  Accordingly, a reasonable jury might yet return a verdict in favor of King, the non-moving party, on the issue of whether the Notice retained by King was confusing to the average consumer.  Therefore, this aspect of Chase's motion for summary judgment was **DENIED.**

b.    Whether Delivery of a Single Copy of the
Notice Triggers Extension of Rescission Right
to Three Years

Under 12 C.F.R. §226.23(b)(1), "a creditor shall deliver two copies of the notice of the right to rescind to each consumer. . . . " Even so, the rescission right is extended to three years only "if the required **notice** or material disclosures are not delivered." 12 C.F.R. §226.23(a)(3) (emphasis added). Significantly, the word "notice" appears in the singular. Elsewhere in Regulation Z, the Federal Reserve Board has used the terms "notices" or "two copies of the notice" whenever it wished to convey that more than one notice is required. See e.g. 12 C.F.R. §226.19(b)(2)(xi) ("The type of information that will be provided in **notices** of adjustments and the timing of such notices.") (emphasis added)). By deliberately choosing to use the singular form "notice" instead of the plural form "notices" or "two copies of the notice," the Federal Reserve Board intended that delivery of a single copy of the Notice would not trigger an extension of the rescission right. In light of this deliberate choice of words, the default rule of construction that "[w]here appropriate, the singular form of a word includes the plural form and plural includes singular," 12 C.F.R. §226.2(b)(1), is not appropriate in this context.

26

It is reasonable to ask why Congress would impose a duty to deliver two copies of the Notice but not extend the rescission right to three years when that duty is breached by delivery of but a single copy.  The answer lies in the fact that rescission is not the only remedy for violations of the duties imposed by TILA.  Congress envisaged other remedies or "[a]dditional relief . . . for violations of [TILA] not related to the right to rescind."  15 U.S.C. § 1635(g).  In other words, the failure to provide two copies of the Notice still constitutes a violation of TILA for which other remedies (such as damages) may be awarded. Under the plain meaning of Regulation Z, however, this kind of violation simply does not trigger an extension of the rescission right to three years.  Accordingly, this aspect of Chase's motion for summary judgment was **GRANTED.**

> 4.   Buoniconti's Motion for Summary Judgment

The FDIC assumed Washington Mutual's third-party claims against Buoniconti and Byrne by operation of law.  See 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(2)(B)(i) (stating that as Receiver, the FDIC succeeds to "all rights, titles, powers and privileges of" the bank and may "take over the assets of and operate" the bank with all the powers thereof).  When the FDIC entered into the P&A Agreement to sell Washington Mutual to Chase, it was agreed that the third-party claims against Buoniconti and Byrne

remained with the FDIC.  FDIC's Mem. Opp'n. Buoniconti's Mot.
Summ. J. 2 n.2 [Doc. No. 77].

As mentioned above, the FDIC is not liable to King for
monetary damages, attorneys' fees, or rescission.  Accordingly,
the FDIC has no claim against Buoniconti or Byrne.  Therefore,
Buoniconti's motion for summary judgment was **DENIED** on the ground
that it is moot.

**IV.  CONCLUSION**

TILA does not permit statutory damages against involuntary
assignees such as the FDIC.  Further, rescission can only be
exercised against the current assignee of the loan, Chase.
Therefore, the FDIC's motion for summary judgment was **GRANTED**.
Thus, Buoniconti's motion for summary judgment was **DENIED** on the
ground that it is moot because King cannot recover against the
FDIC.

If King's rescission right were extended to three years, he
can certainly exercise it as against Chase, the current
"assignee" of the promissory note and mortgage.  15 U.S.C. §
1641(c).  As matter of law, delivery of a single copy of the
Notice does not, in and of itself, trigger an extension of the
rescission right to three years.  There remains, however, a
genuine issue of material fact as to whether the single Notice
retained by King was confusing to the average consumer.  Until
this factual issue is resolved, this Court cannot exclude the

possibility that King's purported rescission right was extended
to three years, thereby making King's rescission of the loan
transaction back in September 2006 fully effective.  Accordingly,
Chase's motion summarily to enforce the promissory note was
**DENIED**.

By the Court,

/s/ William G. Young

WILLIAM G. YOUNG
DISTRICT JUDGE